

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 2 2 2018

CLERK, U.S. DISTRICT COURT
By_____
Deputy

CHARLES C. NOWDEN,           §
                            §
            Movant,          §
                            §
VS.                          §   NO. 4:18-CV-392-A
                            §   (NO. 4:96-CR-085-A)
UNITED STATES OF AMERICA,     §
                            §
            Respondent.       §

MEMORANDUM OPINION
and
ORDER

The above-captioned civil action was initiated by the filing
in criminal case No. 4:96-CR-085-A, by Charles C. Nowden
("Nowden") on May 23, 2018, of a document titled "Motion for Writ
of Error Coram Nobis and Memorandum of Law in Support of Said
Motion," urging three reasons why Nowden contends the court
should set aside his December 1996 conviction in that case for
the offense of bank fraud in violation of 18 U.S.C. § 1344. The
court has concluded that the motion should be denied.

I.

Grounds of the Motion

Nowden alleged in his motion that this court has
jurisdiction under 28 U.S.C. § 1651 to grant the relief he seeks,
citing as authority United States v. Morgan, 346 U.S. 502 (1954)
and United States v. Marcello, 876 F.2d 1147 (5th Cir. 1989).

In summary form, Nowden alleges the following grounds for his motion:

He currently is incarcerated in a prison facility of the State of Texas, serving a sentence that was enhanced from a 2-to-5 year imprisonment range to a 25-to-99 year range under the Texas habitual offender provision as a result of the bank fraud conviction Nowden received by a judgment of this court in 1996 based on his plea of guilty of that offense.

On August 8, 1996, Nowden retained attorney Jim Shaw ("Shaw") to represent him in the bank fraud case. He told Shaw that he wanted to go to trial because he was actually innocent of the charge against him. When they first met, Shaw told Nowden that his services would cost $10,000, which would pay for legal research, depositions, and interviewing government witnesses. He paid Shaw $5,000 when they had their first meeting. When they met the second time, on August 21, 1996, he informed Shaw that he did not have the remaining $5,000 he was to pay, but that he would pay Shaw the remaining amount at a later date. Shaw responded that the trial was set for August 23, 1996, that Shaw needed his money before trial, and that if Nowden did not pay him, Nowden would have to take a plea. On August 23, 1996, the date of trial, Nowden told Shaw that he did not have the rest of the money, and Shaw responded that he had only one option, and

that was to enter a plea of guilty with the goal of obtaining the shortest sentence he could possibly get.

Nowden told Shaw that he was innocent of the charges, and Shaw responded that it did not matter because Shaw had not done the things necessary to prepare for trial, having had only sixteen days for trial preparation. Shaw coerced Nowden into believing that a guilty plea was his only choice. Nowden reluctantly allowed Shaw to coerce him into pleading guilty although a guilty plea was against Nowden's wishes. Nowden's guilty plea was not knowingly, intelligently, or voluntarily entered due to ineffective assistance of his counsel and counsel's incompetent legal advice, and the plea should be set aside.

If Nowden had gone to trial, for the government to prove bank fraud, the government would have been required to prove beyond a reasonable doubt that Nowden committed the bank fraud offense by false or fraudulent pretenses, representation, or promises. A review of the evidence in Nowden's case reveals that Nowden did not commit bank fraud because "the depositing of a series of known insufficient funds checks does not alone constitute false or fraudulent pretenses, or representations."

Doc.[1] 277 at 5, ¶ 8 (omitting emphasis, internal brackets, and quotation marks). Thus, the evidence was insufficient to convict Nowden of bank fraud. The facts recited by Nowden in his motion establish that "his guilty plea was not voluntary or intelligently entered and must be set aside." Id. at 6, ¶ 11. Had Shaw properly investigated and conducted proper legal research, he would not have advised Nowden to plead guilty, but would, instead, have proceeded to trial.

As a third ground for relief, Nowden contends that the government failed to disclose to the defense "the Bank Records; Checks involved; and the deposit slips, showing that [Nowden] did not have anything to do with Bank Fraud." Id. at 3, ¶ 1.

The combination of Shaw's unprofessional conduct and the nondisclosure by the government of the bank records established, according to Nowden, his right to coram nobis relief.

---

[1]The "Doc. ___" references are to the numbers assigned to the referenced items on the docket in the underlying criminal case No. 4:96-CR-085-A. The court was able to print out the docket in that case in Chambers, but had to retrieve from the archives all items shown on the docket other than the motion under consideration, which appears on the docket as document 277 (and which also appears as document 1 on the docket in Case No. 4:18-CV-392-A). The transcripts of Nowden's rearraignment and sentencing hearings had not been prepared because Nowden did not appeal from his sentence or conviction, but the court has caused them to be prepared and they appear on the criminal case docket as documents 278 and 279, respectively.

## Circumstances When a Writ of Error *Coram Nobis* Is Appropriate

"Coram Nobis is a writ of ancient common law origin." Puente v. United States, 676 F.2d 141, 145 n.2 (5th Cir. 1982). It has been abolished in federal civil practice by Rule 60(b) of the Federal Rules of Civil Procedure, but is still available in criminal matters under the All Writs Statute, 28 U.S.C. § 1651(a). Id. "Coram nobis will lie to correct only errors of the most fundamental character, that is, such as rendered the proceeding itself invalid." Id.

The writ of error coram nobis was approved by the Supreme Court for use by federal courts in criminal cases in United States v. Morgan, 346 U.S. 502 (1954). In Morgan, the Court rejected the contention that 28 U.S.C. § 2255 supplanted the writ of error coram nobis remedy, stating that "[w]e do not think that the enactment of § 2255 is a bar to [such a] motion," id. at 511, and holding that "the District Court has power to grant such a motion," id. The Court added that "[i]t is presumed that the [underlying criminal] proceedings were correct and the burden rests on the accused to show otherwise." Id. at 512.

An interpretation by the Fifth Circuit of the Morgan holdings is found in United States v. Dyer, where the Court explained:

> In Morgan, the Court emphasized that the writ of coram nobis could not be used as a substitute for appeal and should only be employed to correct errors of the most fundamental character. The Court further admonished that continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice. The writ will issue only when no other remedy is available and when sound reasons exist for failure to seek appropriate earlier relief. In addition, a petitioner bears the considerable burden of overcoming the presumption that previous judicial proceedings were correct.

136 F.3d 417, 422 (5th Cir. 1998)(emphasis added, citations, internal quotation marks, and brackets omitted).

The Fifth Circuit explained in Jimenez v. Trominski that a writ of coram nobis "will issue only to correct errors resulting in a complete miscarriage of justice." 91 F.3d 767, 768 (5th Cir. 1996).

In United States v. Marcello, 876 F.2d 1147, 1154 (5th Cir. 1989), the Fifth Circuit noted that "[a]n error of the most fundamental character must have occurred and no other remedy may be available." (emphasis added). Even then, "[c]oram nobis is appropriate only where . . . the challenged error is of sufficient magnitude to justify the extraordinary relief." Id.

Promptness in seeking <u>coram nobis</u> relief once the pertinent facts are available to the movant is an important factor in determining whether the extraordinary remedy should be considered. <u>See Dyer</u>, 136 F.3d at 427 ("[i]t has long been recognized that a petitioner seeking <u>coram nobis</u> must exercise 'reasonable diligence' in seeking prompt relief.") In <u>Dyer</u>, the Fifth Circuit affirmed the denial of a petition for writ of <u>coram nobis</u> for the reason, among others, that the petitioner "did not act with reasonable diligence in seeking relief." <u>Id.</u> at 430.

III.

### Pertinent History of Nowden's 1996 Bank Fraud Conviction by this Court, and Related Proceedings

A.  The Indictment and Pre-Plea-of-Guilty Activities

On July 9, 1996, Nowden was named in a 15-count indictment charging him in Count 1 with conspiracy to commit bank fraud and bank theft, in violation of 18 U.S.C. § 371, in Counts 2 through 8 with bank fraud, in violation of 18 U.S.C. §§ 1344 and 2, and in Counts 9 through 15 with bank theft, in violation of 18 U.S.C. §§ 2113(b) and 2. The United States Magistrate Judge determined that Nowden qualified for a court-appointed attorney, and on July 16, 1996, appointed the Federal Public Defender for this district to represent him. Nowden was released on conditions of release pending trial. He appeared before the undersigned on July 26,

1996, when he pleaded not guilty to all counts of the indictment; and, his trial was set for August 26, 1996.

On August 16, 1996, Shaw filed an entry of appearance as retained counsel for Nowden, and Peter Fleury ("Fleury"), the Assistant Federal Public Defender who had appeared as appointed attorney for Nowden, filed a motion to withdraw because of having been notified that Shaw had been retained by Nowden. On August 21, 1996, Nowden, Fleury, and Shaw filed a "Statement Regarding Substitution of Counsel," making known Nowden's understanding that his trial date was August 26, 1996, and that the court would not move the trial date to a later date to allow Shaw more time to prepare, and announcing that his wish, nonetheless, was "to be represented by Jim Shaw and for the court to dismiss Peter Fleury, and the Federal Public Defender's Office, from the case." Doc. 120. The court did not at that time grant Fleury's motion to withdraw; and, Fleury continued to represent Nowden along with Shaw.

Another document was filed on behalf of Nowden on August 21, 1996, this one titled "Motion for Continuance," which was signed by both Fleury and Shaw as counsel for Nowden. Doc. 129. The ground of the motion was that Nowden was charged in two separate indictments with various allegations of bank theft and bank fraud, one pending before the undersigned as Case No. 4:96-CR-

085-A and the other pending before United States District Judge Terry Means (Case No. 4:96-CR-084-Y), who also holds court in Fort Worth. Nowden alleged that he was scheduled to enter a plea of guilty on August 26, 1996, in the case pending before Judge Means,[2] and that the government planned to file a motion to dismiss the indictment in Case No. 4:96-CR-085-A immediately thereafter. The motion contained the recitation that the case before the undersigned was set for trial on August 26, 1996; and, the request of the motion was that "this cause be continued to allow the entry of the plea and the filing of the motion for dismissal." Id. at 1-2. An order denying the motion was signed August 22, 1996.

B.  The Plea Hearing in Case NO. 4:96-CR-085-A

On August 23, 1996, Nowden, accompanied by Fleury and Shaw, appeared before the undersigned for entry of a plea of guilty to Count 4, one of the bank fraud counts, of the July 9, 1996 indictment. The plea was entered pursuant to a plea agreement

---

[2]The docket in Case No. 4:96-CR-084-Y indicates that there were a large number of defendants in that case. It apparently was a case virtually identical to the one pending on the docket of the undersigned, but involving a different series of the same kinds of transactions. The docket shows that there was a 15-count indictment, the first Count of which was a charge of conspiracy to commit bank fraud and bank theft, Counts 2 through 8 of which charged bank fraud, and Counts 9 through 15 charged bank theft. Case No. 4:96-CR-084-Y, Doc. 1. The docket on that case indicates that Nowden did not enter a plea of guilty to any of the counts in that case. He initially was represented by Fleury of the Federal Public Defender's Office, but Fleury was replaced by Shaw as Nowden's attorney in August 1996. Id., Docs. 98, 99, & 102. The Case No. 4:96-CR-084-Y indictment against Nowden was dismissed on January 24, 1997. Id., Doc. 196.

Nowden, Fleury, Shaw, and counsel for the government agreed to and signed on August 23, 1996. Those same persons agreed to and signed a factual resume on August 23, 1996.[3]

The plea agreement included agreement by the government to dismiss all counts of the indictment other than Count 4, to which Nowden pleaded guilty, and to dismiss as to Nowden the indictment in the case pending before Judge Means as Case No. 4:96-CR-084-Y. Doc. 143 at 3, ¶ 8.

The factual resume disclosed that by his plea of guilty Nowden was subjecting himself to a term of imprisonment of 30 years, plus payment of a $1,000,000 fine, plus service of a term of supervised release of 5 years. It listed the elements of the offense as follows:

ELEMENTS OF THE OFFENSE:

COUNT FOUR: In order to establish the guilt of the defendant for the offense of bank fraud, a violation of Title 18, United States Code, Section 1344, the government must prove each of the following elements beyond a reasonable doubt:

That on or about the dates alleged in the Indictment,

First: The defendant knowingly executed, or assisted in the executing, or attempted to execute, a scheme or artifice to defrauded [sic] a financial institution listed in the Indictment of money under the care and

---

[3]After the plea hearing started, the court granted the motion that had been filed August 16, 1996, asking that Fleury be withdrawn as Nowden's attorney. Until then, Nowden had been represented either by Fleury or, once Shaw entered his appearance, by both Fleury and Shaw.

custody of a financial institution by means of false or fraudulent pretenses, representation, or promises; and

Second: The financial institutions were insured by the Federal Deposit Insurance Corporation[.]

Doc. 144 at 1.

The stipulated facts in the factual resume were slightly more than eight pages in length. The first thirty-nine numbered paragraphs on pages 2-5 appear to be a repeat of the overt acts alleged in the indictment in case no. 4:96-CR-085-A, and the conduct alleged in paragraphs 40-57 at pages 5-9 appears to be a repeat of the overt acts alleged in Nowden's case before Judge Means (Case No. 4:96-CR-084-Y).

At the commencement of the plea hearing, the oath was administered to Nowden, and he said he understood that he was under oath and that if he answered any of the court's questions falsely, his answers could later be used against him in a prosecution for perjury or making a false statement.

Rather than to cause the stipulated facts in the factual resume to be read aloud into the record, the court stated on the record a summary of the stipulated facts, following which Nowden admitted that he engaged, and participated, in the scheme the court described. The following exchange occurred:

> *THE COURT:* Okay. Normally I have the factual -- stipulated facts section of the Factual Resume read at this point in time. In this case it's about -- the

stipulated facts section appears to be about a 7-page item. What it appears to do is list transactions that Mr. Nowden and others engaged in between December 1994 and continuing through March of 1995.

Now, apparently what it's describing is a plan that Mr. Nowden and others devised and implemented to obtain personal checks that were worthless, and they were drawn on closed bank accounts, and then those checks would be forged by completing the checks and forging the necessary signatures.

The fraudulent checks would be deposited into existing bank accounts of federally insured financial institutions, and then the account holders, the ones who opened those accounts, would withdraw the fraudulent -- the acquired credit and cash from their accounts before the financial institutions could determine that the deposited checks were fraudulent and worthless, and then each of the participants would keep a portion of the money he or she had derived from a particular transaction of that kind that defrauded the bank.

Do you admit that you engaged in such a scheme and participated in such a scheme as I've just described?

*DEFENDANT NOWDEN:* Yes, Your Honor.

   . . . .

*THE COURT:* . . . .

You've read this -- you've told me you read this Factual Resume thoroughly?

*DEFENDANT NOWDEN:* Yes, Your Honor.

*THE COURT:* And do you admit that everything headed under the heading "Stipulated Facts" is true?

*DEFENDANT NOWDEN:* Yes, Your Honor.

*THE COURT:* In other words, that sets forth the true facts in here?

*DEFENDANT NOWDEN:* Yes, Your Honor.

*THE COURT:* Are those facts under the heading "Stipulated Facts" consistent with your understanding of the true facts, Mr. Shaw?

*MR. SHAW:* Yes, they are, Your Honor.

Doc. 278 at 26-27, 28.

The elements of the offense were read aloud by the court into the record. Nowden testified that he understood that if he were to persist in his plea of not guilty he could not be convicted of the offense charged against him by Count 4 of the indictment unless the government were to prove to a jury beyond a reasonable doubt each of the things listed in the elements of the offense; and, he admitted that all of those elements existed in this case. Id. at 18-19.

With respect to the legal representation he had received from Fleury and Shaw, Nowden gave the following sworn testimony:

*THE COURT:* Okay. You have your attorney, Mr. Shaw, with you now, and then before today you were represented by Mr. Fleury. Have you been fully satisfied with the representation you received from those two attorneys?

*DEFENDANT NOWDEN:* Yes, Your Honor.

*THE COURT:* Do you have any complaint or dissatisfaction at all with the representation either one of those attorneys has provided to you?

*DEFENDANT NOWDEN:* No, Your Honor.

Id. at 19.

13

Other sworn testimony Nowden gave at his plea hearing included the following: (1) he understood that generally a defendant who is accused of a crime cannot plead guilty unless he is actually guilty of that crime, id. at 9, 10, and that if he were to plead guilty, his plea must not be induced or prompted by any promises, mental pressure, threats, force, coercion, or pressure of any kind, and that he should plead guilty only because he is guilty, and for no other reason, id. at 10; (2) he understood that when he receives a copy of his presentence report, he should study it carefully, and should call to his attorney's attention, so that objections could be made, anything in the presentence report that he considers to be inaccurate, id. at 13; (3) other than his plea agreement with the government, no one has "made any promise or assurance to [him] of any kind in an effort to induce [him] to enter a plea of guilty in this case," id. at 25; and (4) no one has "mentally, physically, or in any other way attempted in any way to force [him] to plead guilty in this case," id.

The plea hearing concluded with the following findings and rulings by the court:

> The Court finds in the case of United States of America versus Charles C. Nowden that the defendant, Charles C. Nowden, is fully competent and capable of entering an informed plea, and that his plea of guilty to Count 4 of the indictment is a knowing and voluntary

14

plea supported by an independent basis in fact
containing each of the essential elements of the
offense charged by Count 4 of the indictment.

His plea of guilty is, therefore, accepted, and he
is now adjudged guilty of the offense charged by Count
4 of the indictment.

Id. at 29.

C.    The Presentence Report and Related Matters

The presentence report pertaining to Nowden was completed on

October 11, 1996, when the original was presented to the court

and copies were provided to counsel and Nowden.    Under the

heading "Offense Conduct," the following description was given of

Nowden's criminal conduct:

> 5.    Investigative information revealed that beginning
>       in December 1994 and continuing through March
>       1995, Charles Nowden, recruited others to
>       participate in a scheme to obtain personal checks
>       that were worthless and/or drawn on closed bank
>       accounts.    The checks would be completed and the
>       necessary signatures forged.    The fraudulent
>       checks would then be deposited into existing bank
>       accounts or cashed at federally insured financial
>       institutions.    The participants would split the
>       money obtained from the financial institutions
>       before the financial institution could determine
>       that the checks were fraudulent and worthless.
>
> 6.    Charles Nowden was the leader and organizer of
>       the scheme.    Nowden recruited friends and
>       associates to participate with him.    In some
>       cases, Nowden's friends and associates in turn
>       recruited others to participate in the scheme.
>       Nowden would provide a co-conspirator account
>       holder with a signed check to deposit into their
>       bank account.    The check provided by Nowden would
>       be written against a closed account.    In some

cases, the checks were written against a closed
account previously belonging to Nowden. In other
cases, the checks were written against a closed
account belonging to another willing participant
in the scheme. After the account had been
credited with the fraudulent deposit, Nowden and
the co-conspirator would withdraw all or part of
the fraudulently deposited funds. Nowden would
split the funds with the co-conspirator. Agents
have been unable to verify how each withdrawal was
distributed among the participants.

7.  Following the withdrawal, Nowden told the account
    holders that the bank would close the account.
    Nowden would request that the account holders
    provide him with several blank checks from their
    account. These blank checks would be used by
    subsequent co-conspirators to make fraudulent
    deposits. As each account was used and then
    subsequently closed, Nowden perpetuated the
    scheme by circulating the checks from closed
    accounts.

8.  Specifically in relation to Count 4, Nowden
    recruited Vincent D. Sanford to participate in the
    scheme to cash fraudulent checks. On or about
    March 27, 1995, Nowden caused two fraudulent
    checks totally [sic] $9,860.87 to be deposited
    into Sanford's bank accounts at NationsBank. On
    or about March 28, 1995, Sanford withdrew some of
    the funds from one of his accounts. On the
    following day, he withdrew additional funds from
    another account. Nowden and Sanford each took a
    share of the funds withdrawn from the accounts.

Presentence Report prepared Oct. 11, 1996 in Case No. 4:96-CR-

085-A at 1-2, ¶¶ 5-8.[4]  Nowden filed objections to the

_____

[4]In order to gain access to the presentence report, objections to the presentence report, and the
addendum, the undersigned was required to retrieve from the probation office its sentencing file
pertaining to Nowden. When those documents were prepared, copies were not included as items on the
case docket. Consequently, the court cannot provide docket entry numbers when quoting from those
items.

presentence report, but none of the objections complained of any

of the descriptions in the presentence report of his criminal

conduct, except for an objection to the statement in paragraph 6

that Nowden was the leader and organizer of the scheme. Objs.

Received by Ct. Nov. 4, 1996 at 1-2. The probation officer's

response to the organizer-leader objection was as follows:

> RESPONSE: Pursuant to USSG § 3B1.1(a), the defendant
> qualifies as an organizer or leader of criminal
> activity that involved five or more participants or was
> otherwise extensive. In this case, 34 participants
> were involved in depositing fraudulent checks at six
> financial institutions. The scheme operated from at
> least December 1994 through March 1995. The defendant
> planned and organized the offense, recruited others to
> participate in the scheme, and received a share of all
> illegal funds obtained. He instructed others in how to
> obtain illegal funds and directed all actions taken.
> As a result of the defendant's decision making
> authority, the scope of the scheme was significant in
> its effect on six different financial institutions.
> The institutions lost a total of $126,472. Based on
> the defendant's role as an organizer or leader of a
> criminal activity that involved five or more
> participants, the four levels under USSG § 3B1.1(a) are
> appropriately added.

Addendum to Presentence Report Received by Ct. Nov. 22, 1996 at

2, § III.

D. The Sentencing Hearing

Nowden's sentencing was conducted on December 13, 1996. He

was sentenced to a term of imprisonment of 27 months, a 5-year

term of supervised release, and an obligation to pay restitution

in the total amount of $126,472. All the counts of the

indictment other than Count 4 were dismissed on the government's motion.

The court developed at the sentencing hearing that Nowden and Shaw received in a timely manner the presentence report and the addendum to it, and that both of them "read those items and then discussed them with each other." Doc. 279 at 3-4. Nowden said nothing at the sentencing hearing that could be taken as a suggestion on his part that he was not guilty of the offense to which he had pleaded guilty or that anything occurred to cause his plea of guilty not to be purely voluntary. When invited to "make any statement or presentation [he] would like to make on the matter of mitigation or sentencing more generally," all he had to say was the following:

> THE DEFENDANT: Yes, sir. I would like to apologize to the Court. I would like to apologize to Mr. McMurrey and the state for what happened and to the victims for what happened, and I'm sorry that it happened.

Id. at 6.[5]

Near the end of the sentencing hearing, Nowden was advised of his right to appeal to the Fifth Circuit if he was dissatisfied, that he had the right to appeal in forma pauperis if he qualified, and that the clerk would file a notice of appeal

---

[5]The "Mr. McMurrey" to which Nowden referred is the Assistant United States Attorney who prosecuted both of the bank fraud cases against Nowden, the one over which the undersigned presided and the other over which Judge Means presided.

for him forthwith if he were to specifically request it. Nowden and Shaw both signed at the sentencing hearing a Notice of Right to Appeal Sentence Imposed After Plea of Guilty. After Shaw assured the court that it had been signed by Shaw and Nowden, once they both were satisfied that Nowden understood it, the document was filed. The judgment of conviction and sentence was entered December 24, 1996. Nowden did not appeal from his conviction or sentence.

E.   The Government's Rule 35(b) Motion and the Court's Order Granting It

On April 23, 1997, the government filed a motion for reduction of Nowden's sentence pursuant to the authority of Rule 35(b) of the Federal Rules of Criminal Procedure, reciting that subsequent to Nowden's sentencing on December 13, 1996, he "has cooperated with the government and provided detailed information and testimony regarding his illegal banking activities in the Northern District of Texas." Doc. 187 at 2. The motion contained the following more-detailed description of Nowden's cooperation with the government:

> NOWDEN provided extensive and detailed information regarding his bank fraud dealings with defendants and others. In particular, NOWDEN was debriefed and was prepared to testify in the trials of U.S. v. Mark Washington, 4:96 CR-084-Y and U.S. v. Anthony Jackson, 4:96 CR 124-A. Washington changed his plea to guilty when the case was called for trial. NOWDEN's presence at trial and anticipated testimony influenced

Washington's decision to change his plea. Jackson was convicted by jury before this Court. NOWDEN was sworn as a witness in Jackson's trial, but not called by the government to testify. NOWDEN's testimony, although important to the prosecution, would have been cumulative in light of the other codefendant's testimony already introduced at trial. In addition, NOWDEN substantially assisted the government with his cooperation and testimony during the sentencing hearing in U.S. v. Michael D. Maxwell, 4:96 CR-124-A. NOWDEN was able to establish that Maxwell was a part of the bank fraud scheme and actively recruited others to participate. That Maxwell even executed the scheme without NOWDEN's immediate supervision. While this information may appear to be trivial, it was extremely valuable to the government because Maxwell was denying any involvement and participation in the scheme. NOWDEN was able to demonstrate and establish for the Court the full extent of Maxwell's involvement.

Id. at 2-3.

Nowden did not file anything taking issue with any of the allegations made by the government in its Rule 35(b) motion. On May 29, 1997, the court issued a final judgment granting the government's Rule 35(b) motion by reducing Nowden's sentence of imprisonment from 27 months to 20 months.

F.    Nowden's Many Post-Judgment Motions and His Revocation Proceedings

    1.    His First Motion Under § 2255

On December 22, 1997, Nowden filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. He asserted four grounds for relief, each of which complained of the amount of restitution the court ordered

him to pay.  No complaint was made of any of the things of which
Nowden now complains in support of his motion for writ of error
coram nobis.  He alleged that he was denied effective assistance
of counsel, but only in respect to the failure of his counsel to
present to the court objections regarding the amount of the
restitution he was ordered to pay.  By memorandum opinion and
order signed March 9, 1998, Nowden's § 2255 motion was denied.

2.   His Revocation Proceeding and Related Events

On February 8, 2000, the government filed its motion to
revoke Nowden's supervised release, which was amended on
February 14, 2000.  An attorney by the name of Gerhard
Kleinschmidt ("Kleinschmidt") was appointed to represent Nowden
in the revocation proceeding.  On February 18, 2000, after a
hearing on the motion, the court issued a judgment granting the
government's motion to revoke, and sentencing Nowden to serve a
term of imprisonment of 3 years as punishment for his violations
of his conditions of supervised release.

Nothing in the record suggests that Nowden, through his
court-appointed attorney, took the position in opposition to the
government's motion to revoke that the motion should have been
denied because the December 1996 sentence imposing the term of
supervised release was not lawfully imposed or entered.  On
February 24, 2000, Nowden, through Kleinschmidt, filed a notice

21

of appeal from the judgment of revocation and sentence. Kleinschmidt filed a motion to withdraw from representation of Nowden on May 1, 2000, alleging that he had been notified that an attorney by the name of Gary Udashen ("Udashen") had been retained to represent Nowden on appeal. Doc. 220. The motion to withdraw was granted by order signed May 3, 2000.

On November 15, 2000, Nowden filed a document titled "Motion to Transfer or Consolidate," asking that the already resolved motion to revoke his term of supervised release be transferred to the judge handling the criminal case growing out of one of the grounds of that motion, and that the revocation proceedings and that criminal case be consolidated. Doc. 228. After having received the government's response in opposition, the court denied the motion to transfer or consolidate on November 27, 2000.

On November 3, 2000, the Fifth Circuit issued its opinion and judgment affirming this court's ruling on the motion to revoke supervised release.

On April 18, 2001, Nowden filed a pro se notice of appeal, complaining of the punishment he received when his supervised release was revoked in February 2000. On June 7, 2001, the Fifth Circuit dismissed the appeal.

On October 10, 2001, Nowden, acting _pro se_, filed a document titled "Motion for Modification of Supervised Release," by which he sought a preliminary hearing, a new revocation hearing, and a lowering of his sentence for violation of his supervised release from 36 months to 24 months, to run concurrently with sentences in other cases. The motion was treated as a motion for relief under 28 U.S.C. § 2255. All of the complaints of the document were related to the proceedings bearing on the February 2000 revocation of Nowden's term of supervised release. No complaint was made in the document of any of the issues Nowden raised in his motion for writ of error _coram nobis_. The government responded to Nowden's motion on November 9, 2001; and, the motion was denied by an order signed November 13, 2001. Nowden appealed from that denial, which was denied by an order issued by the Fifth Circuit on June 28, 2002.

### 3.    His Rule 35 Motion

On December 27, 2000, Nowden filed a document titled "Defendant's Motion for Rule 35 Allowance," informing the court that he had rendered significant aid to an FBI agent by turning over to the FBI approximately $18,000,000 worth of computer software, and requesting the court to reduce his sentence to "time served" in consideration for his cooperation. Doc. 233. The court denied that motion on December 27, 2000.

## 4. His Rule 36 Motion

On December 20, 2001, Nowden, acting *pro se*, filed a document titled "Motion to Correct Clerical Mistakes," purportedly pursuant to the authority of Rule 36 of the Federal Rules of Civil Procedure. He complained of events that led to his criminal conviction and sentence in Case No. 4:96-CR-085-A in December 1996. However, he made no complaint in that motion raising any of the grounds, or mentioning any of the things, upon which he relies in his motion for writ of error *coram nobis*. His main complaint in the December 20, 2001 document had to do with his restitution obligation. The court treated the motion as a motion under 28 U.S.C. § 2255. The motion was denied by an order and judgment signed December 21, 2001. On June 28, 2002, the Fifth Circuit dismissed Nowden's appeal from this court's denial of that motion.

## 5. His Rule 33 Motion

On July 31, 2002, Nowden, acting *pro se*, filed a document titled "Petitioner's Petition for a New Trial Under Federal Rule of Civil Procedure 33," again complaining of the proceedings that led to the February 2000 order revoking Nowden's term of supervised release. Doc. 263. The government responded to that motion on August 9, 2002, and it was denied by an order signed August 12, 2002. On August 22, 2002, Nowden, acting *pro se*,

24

filed a motion requesting reconsideration, which was denied by an order signed August 23, 2002. Nowden, acting pro se, gave a notice of appeal from that order on August 29, 2002, which was dismissed by the Fifth Circuit as frivolous by an order issued January 14, 2003.

* * * * *

In none of the filings made by and on behalf of Nowden in his underlying criminal case, starting after the date on which he entered his plea of guilty to Count 4 of the indictment in that case, was there any mention of any of the factors that Nowden uses as grounds of his currently pending motion for writ of error coram nobis. The first time any of the complaints Nowden makes in that motion were ever called to the court's attention was when the motion was filed on May 23, 2018.

IV.

Analysis

The record of Nowden's criminal case establishes beyond doubt that the factual predicates of the grounds of Nowden's motion under consideration are made from beginning to end out of whole cloth. At every step of the way, starting with the Motion for Continuance that was filed August 21, 1996, supra at 8-9, everything Nowden did, or failed to do, before he filed the motion under consideration, constituted explicit and implied

25

admissions by Nowden of his guilt of the offense of conviction. His claim now that he was innocent of that offense is pure fiction.

The same can be said for Nowden's contention that he was improperly led by Shaw to enter a plea of guilty. The record shows that Fleury, as well as Shaw, represented him through his plea of guilty hearing, that he had planned to plead guilty to a comparable offense or offenses pending before Judge Means, and that his decision to plead guilty in Case No. 4:96-CR-085-A apparently resulted from this court's denial of his motion for continuance, supra at 8-9. The sworn testimony given by Nowden at his plea hearing leaves no question but that the plea was knowing, voluntary, and intelligent. There is nothing in the record of Nowden's criminal case that remotely suggests otherwise.

Nowden has failed to present the court with anything that would cause the court to conclude that any aspect of any of the grounds of his motion has the slightest merit. "Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). For a defendant who seeks post-judgment relief on the basis of alleged facts inconsistent with representations he made in open court when entering his plea of guilty to prevail, he must satisfy strict

standards of pleading and proof.  <u>United States v. Cervantes</u>, 132
F.3d 1106, 1110 (5th Cir. 1998).  Nowden has not done so.

No rational fact finder would find from the record of
Nowden's criminal case that his guilty plea was not knowing and
voluntary and made with sufficient awareness of the relevant
circumstances and likely consequences.  Nowden has failed to
allege or provide any independent evidence in support of any of
his contentions that are at variance with the statements he made,
or the answers he gave, while under oath at the rearraignment
hearing.

Moreover, Nowden has alleged no facts to suggest that he
exercised reasonable diligence in seeking the relief he requests
by the motion under consideration; and, the court is satisfied
from the record of his criminal case that there are no facts that
would support a contention of reasonable diligence.  The record
shows that he had multiple opportunities over the more than
twenty-year span since his 1996 conviction to complain of the
grounds of his motion pertaining to the conduct of Shaw.  He knew
of the existence of that conduct when it occurred in 1996 (if one
were to imagine that he accurately described it in his motion),
and should have complained of it at several steps along the way.
He could have complained in his first § 2255, and he had the same
opportunity in virtually every filing that was made in his

criminal case after he filed that motion in December 1997.
Rather than to complain, he has repeatedly engaged in conduct
that confirms that his recent allegations against Shaw are
unfounded.

As to the ground that asserts that had Nowden gone to trial,
the evidence would be insufficient to convict Nowden of bank
fraud, there is no reason to think that Nowden would not have
known of that fact, if it were true, when he pleaded guilty, or
shortly after that. The nature of his complaints against Shaw,
if true, would establish that Nowden, by virtue of his assertion
of innocence, knew when he pleaded guilty that the evidence was
insufficient to convict him of bank fraud. Not only should that
ground have been asserted many years ago if it had merit, the
record establishes that it does not have merit. The record
establishes that Nowden's offense conduct satisfied all elements
of the bank fraud offense to which he pleaded guilty, and that
his plea of guilty is factually supported.

If Nowden intends in his motion to allege, alternatively,
that, even if he was guilty of the offense to which he pleaded
guilty, the government lacked the evidence it would need to
convince a jury of his guilt, such a contention would not satisfy
the coram nobis requirements. If that were the situation, it
would not be an error of "the most fundamental character, that

is, such as rendered the proceeding itself invalid." <u>Puente</u>, 646
F.2d at 145 n.2. The fact that Nowden pleaded guilty to an
offense of which he actually was guilty would prevent him from
making any collateral complaint that, if he had gone to trial,
the government would not have had the evidence to prove his
guilt. Under those circumstances, there certainly would be no
error "resulting in a complete miscarriage of justice"
authorizing issuance of a writ of <u>coram nobis</u>. <u>Jimenez</u>, 91 F.3d
at 768. Put another way, "the challenged error [would not be] of
sufficient magnitude to justify [that] extraordinary relief."
<u>Marcello</u>, 876 F.2d at 1154.

The same reasoning applies to Nowden's third ground for
relief pertaining to the alleged failure of the government to
disclose to the defense certain records. Furthermore, Nowden
fails to make known to the court what records he is talking about
or how those records could have made a difference to Nowden when
he entered his plea of guilty. The conclusory allegations made
by Nowden relative to the records he claims the government failed
to disclose do not give rise to any plausible theory for relief
for Nowden. In addition, Nowden's motion does not contain any
allegations from which the court could find that Nowden used
reasonable diligence in seeking prompt relief from the alleged
failure of the government to disclose certain records. Not only

does he not identify the records to which he refers, he does not allege any facts from which the court could find the point in time when he concluded that the government withheld pertinent records. Absent that information, there would be no way for the court even to begin to evaluate when Nowden should have made an appropriate complaint about the government's nondisclosure of records.

The court is satisfied, and finds and concludes, that Nowden's motion is frivolous. Furthermore, bearing in mind that the court is authorized to consider the record in Nowden's criminal case in determining whether his motion states a claim upon which relief may be granted, the court finds and concludes that Nowden's motion fails to state any such claim.

V.

Order

Therefore,

The court ORDERS that Nowden's motion for writ of error coram nobis be, and is hereby, denied as frivolous and as failing to state a claim upon which relief may be granted.

SIGNED June 22, 2018.

JOHN McBRYDE
United States District Judge